MICHAEL K. LINDSEY (Admitted *Pro Hac Vice*)
lindsey@gdllawfirm.com
JAMES M. SARNECKY (SBN 202465)
sarnecky@gdllawfirm.com
GAVRILOVICH, DODD & LINDSEY, LLP
4660 La Jolla Village Dr., Ste. 750
San Diego, CA 92122
Telephone: (858) 458-3607
Facsimile: (858) 458-9986

ROBERT F. RUYAK  (Admitted *Pro Hac Vice*)
robertr@ruyakcherian.com
BRITTANY V. RUYAK  (Admitted *Pro Hac Vice*)
brittanyr@ruyakcherian
RUYAKCHERIAN, LLP
1776 Eye St. NW, Suite 750
Washington, DC 20006
Telephone: (202) 838-1560

KORULA T. CHERIAN (SBN 133697)
sunnyc@ruyakcherian.com
ROBERT M. HARKINS, JR. (SBN 179525)
bobh@ruyakcherian.com
RUYAKCHERIAN, LLP
1936 University Ave, Suite 350
Berkeley, CA  94704
Telephone: (510) 944-0190

Attorneys for Plaintiff
CARUCEL INVESTMENTS, L.P.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARUCEL INVESTMENTS, L.P., a Delaware limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>NOVATEL WIRELESS, INC., a Delaware corporation; VERIZON COMMUNICATIONS INC., a Delaware corporation; and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>Defendants. | Case No.  16-cv-0118-H-KSC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PORTIONS OF THE SUPPLEMENTAL REPORT OF PLAINTIFF'S DAMAGES EXPERT PATRICK KENNEDY** |

## I. INTRODUCTION

Plaintiff Carucel requests that the Court deny Defendants' motion to strike portions of the supplemental report of Plaintiff's damages expert Patrick Kennedy ("Motion") (Dkt. 169). Defendants assert that portions of the Kennedy Supplemental Report should be struck (a) for "attempting to erect an entirely new damages framework with a different hypothetical negotiation" and (b) as an "unauthorized reply report." *See* Dkt. 171, at 7 & 9.

As an initial matter, by law a hypothetical negotiation is specific to the parties and acts of infringement involved. As such, Carucel's hypothetical negotiation with Verizon would be different from Carucel's negotiation with Novatel. Defendants also mischaracterize the nature of the supplemental expert report and downplay their own responsibility for making the supplement necessary. Verizon refused to produce revenue and cost information regarding data service plans associated with the accused devices that deprived Dr. Kennedy of the information needed to give an expert opinion on damages attributable to Verizon. The delayed discovery showed that Verizon derived by far most of its MiFi-related revenue came from data usage plans. Dr. Kennedy provided exactly the type of supplement he reserved the right to provide in his original report and deposition, a report that could not have been produced until he received the data service information. There is no good reason to strike his supplemental report.

Finally, Defendants accuse Dr. Kennedy of going too far by addressing criticisms leveled by Defendants subsequent to Dr. Kennedy's initial report. But Dr. Kennedy followed the same methodology in his supplemental report and that section merely supports his supplemental opinion. An expert is not only permitted to address new information in a subsequent report, but should take into account all known information related to a report when the report is written. The entire report is proper, and none of it should be stricken.

1  
CASE NO. 16-cv-0118-H-KSC  
PLTF OPPO TO DEFT MTN TO STRIKE SUPPLEMENTAL KENNEDY REPORT

## II. FACTUAL BACKGROUND

The accused products, or "MiFi" devices, are small portable devices that wirelessly connect mobile user devices like laptop computers and tablets to cellular phone networks. Novatel sells the accused MiFi products to internet service providers, including Verizon. Verizon sells MiFis with data service plans—the MiFis cannot operate without the service plan.

During discovery, Verizon produced information related to the sale of MiFi units without disclosing the associated data service plans bundled with those units. *See* Declaration of Michael Lindsey in Support of Opposition to Defendants' Motion to Strike Portions of the Supplemental Report of Plaintiff's Damages Expert Patrick Kennedy ["Lindsey Decl."], ¶ 2.) Carucel served interrogatories seeking discovery on wireless data plans sold together with the accused devices. Lindsey Decl., ¶ 3 & Ex. A. Carucel also served an amended 30(b)(6) notice on Verizon adding topics related to wireless services bundled with MiFi devices, and also served a request for document production seeking documents related to Verizon's wireless data service plans associated with MiFi devices on October 31, 2016. Lindsey Decl., ¶ 4 & Ex. B. Verizon refused to provide this information. Lindsey Decl., ¶ 5, 6 & Ex. C, D.

The parties met and conferred regarding Verizon's refusal to produce discovery on data service agreements related to MiFi devices but were unable to reach a resolution. Lindsey Decl., ¶ 2. During this time, as required by the October 25, 2016 Amended Scheduling Order [Dkt. 135], on December 2, 2016, Carucel produced the Expert Report of Patrick F. Kennedy ("Original Report"). Lindsey Decl., ¶ 7, Ex. E. Noting the absence of the above requested discovery, Dr. Kennedy stated that "this report addresses damages specifically related to Novatel. If necessary, I will prepare additional analysis and opinions related to the carrier defendants after the carrier defendants have produced information in response to Plaintiff's request for production." Original Report at 2.

"Based on documents provided, I have estimated the product and service revenue generated from the carrier defendants…. To date, I have received a total of two documents from the carrier defendants, which is not a sufficient basis to form a damages opinion. Upon receipt of requested documentation from carrier defendants, I plan to update my analysis and to issue an opinion regarding any damages owed to Carucel from the sale of service contracts for infringing devices." Original Report at 55.

On December 19th (more than two weeks later), the Court held a telephonic hearing regarding the requested discovery and ordered Verizon to produce discovery related to the data service plans sold with the accused products. Given that Verizon had not produced the discovery before the expert report deadline, the parties submitted a joint stipulation to amend the schedule [Dkt. 151] resulting in the Second Amended Scheduling Order that issued on January 26, 2017, ordering Plaintiff to "serve its supplemental damages expert report opinion on damages regarding Cellco's sales of accused products together with associated wireless data plan sales by February 2, 2017." [Dkt. 152.]

Verizon produced two spreadsheets disclosing data service revenue, VerizonCellco000000199.xls and VerizonCellco000000221.xls on January 5, 2017, followed by an additional spreadsheet VerizonCellco000000622.xls on February 1, 2017. Lindsey Decl., ¶ 2. During the deposition of Verizon's Director of Business Intelligence on January 26, 2017, Mr. Thomas Benz ("Mr. Benz") conceded that [REDACTED]



22  Benz Dep. Trans. at 160:17-25, 162:17-25, 99:5-24 (italic emphasis added)
23  (Lindsey Decl., Ex. F).
24      Consistent with the testimony of Verizon's corporate representative, and as
25  detailed in the Supplemental Report produced on February 3, 2017, this
26  additional discovery shows that the revenue that Verizon derived from MiFi
27  related data service plans ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Supplemental Report at 13.

|  | Time Period |  | Source |
|---|---|---|---|
| Units | 07/2010 – 05/2015 |  | VerizonCellco000000198.xls |
| Device Revenues (w/o Discounts) | 04/2011 – 05/2015 |  | VerizonCellco000000194.xls |
| Device Revenues (w/ Discounts) | 04/2011 – 05/2015 |  | VerizonCellco000000194.xls |
| Message and Data Revenues | 01/2010 – 05/2015 |  | VerizonCellco000000221.xls |

Supplemental Report at 13.

Verizon's initial production of financial information amounted to one spreadsheet that did not include any service revenue, did not include unit sales and device revenue for the first 23 months of infringement, and did not include unit and sales revenue for the first infringing device, the MiFi 2200, for all periods. With the benefit of Verizon's newly produced discovery and Rule 30(b)(6) deposition testimony from Thomas Benz (a deposition that occurred on January 26, 2017), Dr. Kennedy was able to provide an opinion regarding damages attributable to Verizon. Carucel produced the Supplemental Report on February 3, 2017. That report applies a comparable license, but that analysis is based on revenue and profits that include the data service plans Dr. Kennedy previously did not have, and without which he could not have completed his supplement.

### III.   ARGUMENT

**A. Sections I-IV of the Supplemental Report Should Not Be Stricken, Because the Supplemental Report Did What Was Permitted by the Court in the Second Amended Scheduling Order and Resulted from Defendants' Improper Refusal to Produce Discovery**

The Second Amended Scheduling Order permitted Carucel to serve a "supplemental damages expert report opining on damages regarding *Cellco's sales of accused products together with associated wireless data plan sales* ...." (italics added). Despite the express language of the Second Amended Scheduling

1  Order, Verizon argues that Carucel 'sandbagged' Verizon by opining on a
2  hypothetical negotiation between Carucel and Verizon.  Motion at 9.  Verizon
3  argues that Dr. Kennedy should have disclosed his "framework" in his Original
4  Report, if Dr. Kennedy wanted to "base damages on a hypothetical negotiation
5  between Carucel and Verizon." *Id*.

6  But Dr. Kennedy *did* provide Verizon with clear notice in his Original
7  Report, *repeatedly*.  See Original Report, at 2 [Lindsey Decl., Ex. E] ("I will
8  prepare additional analysis and opinions related to the carrier defendants
9  [including Verizon] after the carrier defendants have produced information in
10 response to Plaintiff's requests for production"), 41 n.148 (service revenue
11 needed to provide opinion about Verizon), 52 n.181 (noting analysis could apply
12 to Verizon if given service revenue), 55 ("Upon receipt of requested
13 documentation from carrier defendants, I plan to update my analysis and to issue
14 an opinion regarding any damages owed to Carucel from the sale of service
15 contracts for infringing devices.").   Dr. Kennedy stated the same at his
16 deposition. Kennedy Dep., at 105 (Lindsey Decl., Ex. F). Verizon has no basis to
17 claim that it lacked notice.

18 Verizon also cannot complain regarding the supplement when the
19 supplement was required by Verizon's own decision to withhold financial
20 information from the Court until ordered to produce it after the damages expert
21 report deadline.  Verizon knew that █████████████████████████
22 ███████████████████████████████████ (Benz Dep. Trans. at 160:17-25,
23 162:17-25, 99:5-24 [Lindsey Decl., Ex. G]), but it refused to produce this
24 discovery until compelled by the Court's December 19, 2016 discovery order.  It
25 only produced this information in January, over a month after Dr. Kennedy's
26 original report was due. Verizon's assertions that the withheld discovery would
27 "(at most) slightly nudge the royalty rate under Georgia-Pacific Factor 6"
28 (Motion at 10) are simply incorrect, as can be seen by Dr. Kennedy's

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

1  supplemental report, which was supported by the data service revenue.

2  Verizon understates the importance of the financial information it
3  produced after Dr. Kennedy's Original Report.  As of the Original Report,
4  Verizon had only produced incomplete device unit sales and device sales revenue
5  beginning over a year after the first infringement (July 2010 versus May 2009).
6  Lindsey Decl., ¶ 2. Verizon produced no sales data for its first infringing device,
7  and the incomplete data produced at the time of the Original Report implied that
8  ████████████████████████████████████████████████████████████████
9  ███████████████████████████████ *Id.* Verizon's subsequent production
10 revealed that it makes ████████████ from device sales and service per
11 unit sold.  *See* Suppl. Kennedy Rpt. Dr. Kennedy's report discusses at length the
12 clear connection between service/data revenues and device sales as reported by
13 Verizon in its SEC filings and communications with the FCC. *Id.*

14 Verizon's supplemental production of financial information dramatically
15 changes Verizon's gains from infringement and the profit from the infringing
16 features of the patents-in-suit.  Verizon's actual profitability is an essential
17 consideration in Dr. Kennedy's quantitative and qualitative analysis of the
18 reasonable royalty that would result from a hypothetical negotiation with
19 Verizon.  Verizon's profit derived from the patented features is part and parcel of
20 Dr. Kennedy's analysis, including many of the *Georgia-Pacific* factors. A
21 damages expert could not perform a reasonable royalty analysis without this
22 critically important information.

23 Verizon argues that Dr. Kennedy should not have waited until his
24 supplement report to provide "a new damages theory *that could have been*
25 *disclosed in his initial report*."  Motion at 2 and 9 (emphasis added).  However,
26 Dr. Kennedy stated in both his original report and deposition that he would
27 provide a report about Verizon but could not until he had the service revenue and
28 profitability.  The opinions cited by Defendants are inapplicable because they did

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

not involve a supplemental expert report made necessary by the opposing party's refusal to produce discovery. *Lindner*, 249 F.R.D. 625, 640 (D. Haw. 2008) (excluding Djou October 2007 and subsequent reports, because "Plaintiff could have conducted the additional field work prior to his original expert disclosure deadline or before the June 2007 rebuttal reports and Plaintiff should have known at that time that such additional field work would be relevant."); *Beller*, 221 F.R.D. 689, 694-695 (D.N.M. 2003) ("This is not a situation where, subsequent to the preparation of the original report, new information was discovered which required that the original report be supplemented because the original opinion was no longer correct").  Here, in contrast, Carucel could not gather the discovery necessary for Dr. Kennedy to provide a damages opinion on Verizon in the Original Report, because **Verizon** refused to produce this discovery.

Verizon also provides no case law in support of the proposition that it is somehow improper for Carucel to submit a damages opinion based on a hypothetical negotiation between Carucel and Verizon.  As conceded by Defendants, the Second Amended Scheduling Order specifically permitted Carucel to submit a "supplemental damages expert report opining on damages regarding *Cellco's sales of accused products together with associated wireless data plan sales* …." Motion, at 9.  Despite this, Verizon argues that Dr. Kennedy's damages opinion should be limited to a hypothetical negotiation between Carucel and Novatel (Motion, at 10), contradicting the Second Amended Scheduling Order.  Verizon's approach makes no sense.

Consistent with *Georgia-Pacific* factors, the hypothetical negotiation analysis depends on the specific parties and acts of infringement involved in the negotiation. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010) ("A 'reasonable royalty' derives from a hypothetical negotiation between *the patentee* and *the infringer* when the infringement began.") (emphasis added); *Integra v. Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 869 (Fed. Cir. 2003)

(same). Different infringements require different royalties based on the different hypothetical negotiations that would be applied. *See Applied Med. Res. Corp v. U.S. Surgical Corp.*, 435 F.3d 1356, 1361-62 (Fed. Cir. 2006) (separate infringement "requires a separate evaluation of reasonable royalty damages"); *Dataquill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1025 (S.D. Cal. 2014) (same). As a result, consistent with the Second Amended Scheduling Order, and employing a reliable damages methodology, Dr. Kennedy properly considered Verizon's newly produced discovery within the framework of a hypothetical negotiation between Carucel and Verizon.

Had Verizon properly produced the sought MiFi data service plan discovery, supplementation of the Original Report would have been unnecessary. Verizon cannot realistically be heard to complain now that it was prejudiced by its own refusal to produce discovery until required by the Court. Defendant's Motion to strike sections I-IV of the Supplemental Report should be denied.

**B. Section VI Was a Proper Part of the Supplemental Report**

The Supplemental Report was made necessary by Verizon's refusal to produce the MiFi data service plan discovery until the Court ordered it to do so. After his initial report but before the supplement, Dr. Kennedy was provided with criticism of the approach he would continue to take in the supplemental report. Dr. Kennedy therefore included an evaluation of Dr. McDuff's analysis in section IV of the Supplemental Report. The purpose of section IV is to address anticipated challenges to Dr. Kennedy's Supplemental Report.

Verizon's legal citations are inapposite, as they address the need for an end to supplementations to avoid and endless cycle under Federal Rule of Civil Procedure 26(e) when a court did ***not*** expressly permit the supplement. *See, e.g., Sandata*, 2007 U.S. Dist. LEXIS 85176, *12 (S.D.N.Y. 2007); *Beller*, 221 F.R.D. 689, 695; *Luke*, 323 Fed. Appx. 496, 499-500 (9th Cir. 2009). In contrast, here Dr. Kennedy had express authorization from this Court to produce the

supplement per the Second Amended Scheduling Order.  This is not the type of "cascading" reports that go back-and-forth.  Instead, it is simply one report that was permitted by this Court's order and required documentation that Defendants previously had refused to produce.

Any professional expert should take into account known criticisms being leveled at his or her methodology in providing an analysis, and that is all Dr. Kennedy did here regarding his supplement.  Additionally, there was no prejudice to Defendants, because Defendants had an opportunity under the Second Amended Scheduling Order to depose Dr. Kennedy on all aspects of his supplemental report including his responses to the criticisms regarding his methodology (an opportunity they declined).

In preparing his opinion regarding the damages attributable to Verizon pursuant to the Second Amended Scheduling Order, Dr. Kennedy properly took into account the information he had at the time he wrote the report.  Nothing less should have been expected of him.  Had he failed to take into account known criticisms, Defendants surely would have moved to exclude his report on that basis, or used his failure in cross-examination.  Basically, Defendants now complain that Dr. Kennedy did his job fully and competently.  Defendant's Motion to strike sections VI of the Supplemental Report should be denied.

## IV.   CONCLUSION

For the foregoing reasons, Carucel respectfully requests that Defendant's Motion to Strike be denied in its entirety.

Dated: February 27, 2017

/s/ Robert Harkins
Robert Harkins, Cal. Bar No. 179525
RuyakCherian LLP
1936 University Ave, Ste 350
Berkeley, CA  94704
Telephone: (510) 944-0190
bobh@ruyakcherian.com

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 27th day of February, 2017, with a copy of this document via the Court's EM/ECF system. Any other counsel of record will be served by electronic mail, facsimile and/or first class mail on the same date.

*/s/ Robert Harkins*
Robert Harkins

RuyakCherian LLP
1936 University Ave, Ste 350
Berkeley, CA 94704
Telephone: (510) 944-0190
sunnyc@ruyakcherian.com