QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Amar L. Thakur (Bar No. 194025)
  amarthakur@quinnemanuel.com
  Bruce R. Zisser (Bar No. 180607)
  brucezisser@quinnemanuel.com
  David Grable (Bar. No. 237765)
  davegrable@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Joshua L. Sohn (Bar No. 250105)
  joshuasohn@quinnemanuel.com
777 6th Street NW, 11th Floor
Washington, D.C. 20001
Telephone:   (202) 538-8000

Attorneys for Defendants
NOVATEL WIRELESS, INC., VERIZON COMMUNICATIONS, INC., AND CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARUCEL INVESTMENTS, L.P., a Delaware limited partnership,<br><br>          Plaintiff,<br><br>     v.<br><br>NOVATEL WIRELESS, INC., a Delaware corporation, VERIZON COMMUNICATIONS, INC., a Delaware corporation, CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, a Delaware general partnership,<br><br>          Defendants. | CASE NO. 3:16-cv-00118-H-KSC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE SUPPLEMENTAL EXPERT TESTIMONY OF DR. DEFOREST MCDUFF**<br><br>Date: April 3, 2017<br>Time: 9:00 a.m.<br>Courtroom: 15A<br>Judge: Hon. Marilyn L. Huff |

**TABLE OF CONTENTS**

**Page**

I. DR. MCDUFF WAS FULLY JUSTIFIED IN OPINING THAT THERE WOULD BE NO HYPOTHETICAL NEGOTIATION WITH VERIZON BECAUSE THE HYPOTHETICAL NEGOTIATION WITH NOVATEL WOULD HAVE COVERED VERIZON'S INFRINGEMENT ...................................................................................... 1

II. CARUCEL'S OTHER ARGUMENTS ARE WITHOUT MERIT .................. 4

III. CONCLUSION ............................................................................................. 5

## I. DR. MCDUFF WAS FULLY JUSTIFIED IN OPINING THAT THERE WOULD BE NO HYPOTHETICAL NEGOTIATION WITH VERIZON BECAUSE THE HYPOTHETICAL NEGOTIATION WITH NOVATEL WOULD HAVE COVERED VERIZON'S INFRINGEMENT

Dr. McDuff's Supplemental Report opined that there would be no separate hypothetical negotiation between Carucel and Verizon because the hypothetical negotiation between Carucel and Novatel would have addressed infringement for both Novatel and Verizon. To support this opinion, Dr. McDuff reasoned that: "(1) Novatel's royalty and license would cover Verizon's ability to resell the accused MiFi devices . . . ; (2) Carucel is making no separate claims of infringement by Verizon other than the resale of the accused MiFi devices; (3) Novatel is defending and indemnifying Verizon for its alleged infringement in this lawsuit; and (4) I have been informed that the first sale doctrine and patent exhaustion, from a legal perspective, would cause Verizon to be licensed as a downstream customer." McDuff Supp. Report (Dkt. 210-2) at 4. Dr. McDuff further reasoned that "[e]conomically, it is much more desirable and administratively feasible for companies to negotiate with the single manufacturer than the full range of distributors and resellers, which can be numerous. In light of this, Verizon would have no reason to negotiate directly with Carucel, and would, if requested to negotiate by Carucel, simply direct Carucel to negotiate with Novatel (as it has done in this lawsuit by tendering its defense to and being fully indemnified by Novatel)." *Id.* at 4-5. In light of all these factors, he opined that that reasonable royalties for Verizon's alleged infringement would have been addressed through the hypothetical negotiation between Carucel and Novatel, such that there would have been no separate hypothetical negotiation between Carucel and Verizon. *See id.*

Carucel now argues that Dr. McDuff's opinion "is improper as a matter of law[,] and allowing that opinion to be presented to the jury would constitute legal error." Opp. at 1:13-14. Carucel is mistaken. When a downstream user or reseller of an accused product (such as Verizon) is sued for infringement, it is perfectly

-1-    Case No. 3:16-cv-00118-H-KSC
06592-00001/9018820.1    DEFENDANTS' OPP. TO MOTION TO EXCLUDE SUPPLEMENTAL MCDUFF TESTIMONY

1 appropriate to consider whether the hypothetical royalty would have been paid by
2 the upstream manufacturer of the product. As the Federal Circuit stated in one of its
3 earliest precedential decisions:

> Thus, in a suit against a user, we cannot simply hypothesize what a reasonable user would pay apart from considerations of what royalty a maker would pay and what rights would flow to the user if the maker had a license. Simply stated in terms of this case, the quantum of Stickle's recovery for an infringing fryer does not depend on whether Heublein [the downstream user] or HCI [the upstream maker] is the defendant. Rather, it depends on what royalty reasonably would have resulted from negotiations where a willing licensor was aware that HCI would make and Heublein would use the fryer.

*Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1562 (Fed. Cir. 1983).

Here too, one cannot simply hypothesize what a downstream reseller like Verizon would pay apart from considerations of what royalty the upstream manufacturer (Novatel) would pay, and what rights would flow to Verizon as a result of Novatel's royalty payment. This is just what Dr. McDuff did. He laid out numerous reasons why a hypothetical negotiation over the MiFi devices would have taken place between Carucel and Novatel, and how Novatel's royalty payment over the MiFi devices meant that Verizon could not be double-charged for merely re-selling those same devices. *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) ("[A] party is precluded from suing to collect damages for direct infringement by a buyer and user of a product when actual damages covering that very use have already been collected from the maker and seller of that product.").

By the same token, *Stickle* refutes Carucel's argument that the hypothetical negotiation must have been between Carucel and Verizon simply because Verizon has been named as a defendant. As *Stickle* states: "the quantum of Stickle's recovery for an infringing fryer does not depend on whether Heublein or HCI is the defendant. Rather, it depends on what royalty reasonably would have resulted from negotiations where a willing licensor was aware that HCI would make and Heublein would use the fryer." *Stickle*, 716 F.2d at 1562. Here too, the reasonable royalty "depends on what royalty reasonably would have resulted from negotiations where a

willing licensor was aware that [Novatel] would make and [Verizon] would [re-sell] the [MiFi]." Dr. McDuff presented a wealth of case-specific reasons why Novatel would have represented both Defendants in negotiating over this reasonable royalty, and Carucel has presented no rationale for why Dr. McDuff's reasoning is flawed. Indeed, as explained in Defendants' *Daubert* motion against Carucel's Supplemental Damages Report (Dkt. 207), it is **Carucel's** expert who behaves unreliably by positing that there that would be a separate negotiation between Carucel and Verizon, when all evidence indicates that both Defendants' infringement would be addressed through a single hypothetical negotiation between Carucel and Novatel.

Later cases have echoed *Stickle* and held that, when an upstream manufacturer and a downstream user or reseller are sued for infringement, it is perfectly appropriate to consider whether the manufacturer would have handled the negotiation for both defendants — particularly if the manufacturer is indemnifying the downstream defendant. For example, in *Lucent Techs. Inc. v. Gateway, Inc.*, No. CIV 02CV2060-B CAB, 2007 WL 1306539 (S.D. Cal. Apr. 30, 2007), Microsoft manufactured the infringing software, which was then incorporated into Dell and Gateway computers. In ruling upon motions in limine, Judge Brewster of this District held that Defendants' expert "can testify as to whether Dell and Gateway would have relied on Microsoft to make a license with Lucent or whether Microsoft would have indemnified as considerations in a hypothetical negotiation." *Id.* at *1. Judge Brewster's holding applies equally to this case, where Novatel is the manufacturing defendant who is indemnifying downstream parties like Verizon. *See also Itex, Inc. v. Westex, Inc.*, No. 05 CV 6110, 2011 WL 856583, at *4 (N.D. Ill. Mar. 9, 2011) ("the entire amount of potential damages would be accounted for in a hypothetical royalty between the plaintiffs and the manufacturers, rendering the details of the customers' downstream sales irrelevant.")

None of Carucel's cited cases (Opp. at 1:20-2:22) suggest a different result. Indeed, none of Carucel's cited cases even address the question of whether the

1  upstream manufacturer or a downstream user/reseller would be the appropriate
2  counterparty in the hypothetical negotiation.  As discussed above, the on-point
3  caselaw indicates that the upstream manufacturer is the appropriate counterparty,
4  and the case-specific evidence from this case clearly shows that the upstream
5  manufacturer (Novatel) would indeed have negotiated on behalf of the downstream
6  re-seller (Verizon).  Dr. McDuff properly recognized and applied this fact.

## II. CARUCEL'S OTHER ARGUMENTS ARE WITHOUT MERIT

The second part of Carucel's *Daubert* motion argues vaguely that "Dr. McDuff's other opinions [in his Supplemental Report] are based on the same flawed analysis as his initial report.  Rather than repeat the same arguments, Carucel asks the Court to apply its ruling on Carucel's earlier *Daubert* motion to the supplement as well." Mot. at 3:10-12.  To the extent Carucel re-alleges arguments from its earlier *Daubert* motion, Defendants oppose for the same reasons given in their Opposition to Carucel's earlier *Daubert* motion.

Besides re-alleging arguments from its earlier *Daubert* motion, Carucel also states that the Verizon settlement agreements cited in Dr. McDuff's Supplemental Report are not sufficiently "comparable to the current case, making his opinions as to those licenses inadmissible under *Daubert*." Mot. at 3:21-22 (citing McDuff Supp. Report at 14-23).  Carucel gives no further explanation of its argument, making it difficult for Defendants to fairly respond.  But in any event, Dr. McDuff did not use the cited settlement agreements to generate a reasonable royalty.  He merely used these agreements to show how "Verizon and its suppliers often enter into low-value settlement agreements, that is, paying a low lump-sum settlement to avoid ongoing litigation expense and seeking to resolve outstanding patent infringement disputes.  Notably, these agreements are with non-practicing entities who do not make or sell products in the market." McDuff Supp. Report at 23.

If there would have been a hypothetical negotiation between Carucel and Verizon at all, then it is proper to present the types of licenses that Verizon typically

enters into with non-practicing patentees, so that the jury would understand Verizon's general practices heading into the hypothetical negotiation. This is relevant background material. Defendants agree that Dr. McDuff could not base a specific royalty number on these settlement agreements absent a rigorous showing that they are technically comparable. But he did not attempt to use these settlement agreements to prove a specific royalty. He used them for background purposes only. Nothing in Fed. R. Evid. 702 or *Daubert* forbids him from doing so.

Carucel's final argument is to say that Defendants did not produce these settlement agreements during the course of fact discovery, and therefore Dr. McDuff should be precluded from relying on them as a procedural matter. This argument fails for at least two reasons. First, a *Daubert* motion tests the substantive reliability of an expert's opinions; it is not the proper vehicle to litigate procedural issues such as timeliness. Second, Defendants had no idea that Carucel was pursuing a Verizon-as-Hypothetical-Negotiator damages theory until the service of Carucel's Supplemental Damages Report on February 3, 2017. It was this new theory that rendered Verizon's license agreements relevant in the first place. Thus, Defendants collected these license agreements and served them concurrently with Dr. McDuff's Supplemental Report. Given the circumstances, the timing of this production was proper, and Carucel does not even try to articulate any prejudice that it suffered. Accordingly, Carucel's attempt to strike these licenses on procedural grounds should be rejected.[1]

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Carucel's Motion.

---

[1] Defendants also respectfully incorporate their Opposition to Carucel's Motion in Limine #2, which gives further detail and explanation on why the challenged licenses were timely produced.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: March 20, 2017 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 3 | | |
| 4 | | |
| 5 | | By: /s/ *Amar Thakur*<br>Amar Thakur (Bar No. 194025)<br>Email: amarthakur@quinnemanuel.com |
| 6 | | |
| 7 | | *Attorneys for Defendants Novatel Wireless, Inc., Verizon Communications, Inc. and Cellco Partnership d/b/a Verizon Wireless* |
| 8 | | |


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 20, 2017 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

DATED: March 20, 2017        By: */s/ Amar Thakur*
                                  Amar Thakur
                                  amarthakur@quinnemanuel.com
                                  *Attorneys for Defendants Novatel Wireless, Inc., Verizon Communications, Inc. and Cellco Partnership d/b/a Verizon Wireless*