MICHAEL K. LINDSEY (Admitted *Pro Hac Vice*)
lindsey@gdllawfirm.com
JAMES M. SARNECKY (SBN 202465)
sarnecky@gdllawfirm.com
GAVRILOVICH, DODD & LINDSEY, LLP
4660 La Jolla Village Dr., Ste. 750
San Diego, CA 92122
Telephone: (858) 458-3607
Facsimile: (858) 458-9986

ROBERT F. RUYAK (Admitted *Pro Hac Vice*)
robertr@ruyakcherian.com
BRITTANY V. RUYAK (Admitted *Pro Hac Vice*)
brittanyr@ruyakcherian
RONALD R. WIELKOPOLSKI (Admitted *Pro Hac Vice*)
ronw@ruyakcherian
RUYAKCHERIAN, LLP
1776 Eye St. NW, Suite 750
Washington, DC 20006
Telephone: (202) 838-1560

KORULA T. CHERIAN (SBN 133697)
sunnyc@ruyakcherian.com
ROBERT M. HARKINS, JR. (SBN 179525)
bobh@ruyakcherian.com
RUYAKCHERIAN, LLP
1936 University Ave, Suite 350
Berkeley, CA 94704
Telephone: (510) 944-0190

Attorneys for Plaintiff
CARUCEL INVESTMENTS, L.P.

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

CARUCEL INVESTMENTS, L.P., a Delaware limited partnership,

Plaintiff,

v.

NOVATEL WIRELESS, INC., a Delaware corporation; VERIZON COMMUNICATIONS INC., a Delaware corporation; and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,

Defendants.

Case No. 16-cv-0118-H-KSC

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF PLAINTIFF'S DAMAGES EXPERT PATRICK F. KENNEDY**

Hearing Date: April 3, 2017
Time: 9:00 A.M.
Courtroom: 15A
Judge: Hon. Marilyn L. Huff

# TABLE OF CONTENTS

I. INTRODUCTION .... 1

II. LEGAL STANDARD .... 2

III. DR. KENNEDY'S USE OF THE NOVATEL-SPH LICENSE WAS APPROPRIATE UNDER DAUBERT .... 3

A. Dr. Kennedy Used the Actual Royalty Rate in the SPH License, Which is an Accepted Method .... 4

1. Dr. Kennedy Was Correct to Look at the Expressly Stated Royalty Rate .... 4

2. An Expert Cannot Be Required to Find that Novatel Participated in Fraud in Its Own Agreement .... 7

B. Dr. Kennedy's Adjustments to the Novatel-SPH License Do Not Violate Daubert .... 8

IV. DR. KENNEDY'S ANALYSIS REGARDING THE ANTENNAS WAS PROPER .... 11

V. CONCLUSION .... 12

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

# TABLE OF AUTHORITIES

**Cases**

*accord i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010) .......... 3

*Accord Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1299 (Fed. Cir. 2009) .......... 5

*Accord United States v. Topilina*, 593 Fed. Appx. 639, 641 (Fed. Cir. 2015) .......... 8

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) .......... 3

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1326 (Fed. Cir. 2014) .......... 3, 4, 9, 10

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1033 (9th Cir. 2014) .......... 2

*Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015) .......... 11

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) .......... 2, 3, 8

*Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002) .......... 2

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 2015 U.S. Dist. LEXIS 163116, *11 (N.D. Cal. Dec. 3, 2015) .......... 5

*Ericsson Inc. v. D-Link Sys.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) .......... 9

*Henderson v. U.S.*, 135 S. Ct. 1780, 1783 n.1, 191 L. Ed. 2d 874 (2015) .......... 7

*In re Maxim Integrated Prods.*, 2015 U.S. Dist. LEXIS 124062, *31-33, 2015 WL 5311264 (W.D. Pa. Sept. 11, 2015) .......... 9

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) .......... 2

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) .......... 9

*Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1110 (Fed. Cir. 1996) .......... 3

*Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) .......... 3

*Multimedia Patent Trust v. Apple Inc., 2012 U.S. Dist. LEXIS 192122, *5-*7* (S.D. Cal. Nov. 19, 2012) .......... 2

*Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012 U.S. Dist. LEXIS 33619 (N.D. Cal. Mar. 13, 2012) .......... 9

*Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010) .......... 3

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870-72 (Fed. Cir. 2010) .. 7, 9, 10

*Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1297 (Fed. Cir. 2015) ..... 8

*TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009) ..... 5

*United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970) ..... 8

*VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014) ..... 9

**Statutes**

35 U.S.C. § 286 ..... 5, 6

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

## I. INTRODUCTION

Defendants challenge the damages analysis of Plaintiff Carucel's damages expert Patrick Kennedy on two grounds, neither of which has merit. First, Defendants take issue with Dr. Kennedy's analysis of a license agreement entered into between Novatel and SPH. However, Dr. Kennedy relied upon Carucel's technical expert to establish comparability. He also properly assessed that the SPH license is comparable in its application of a per unit royalty. He appropriately assessed the differences in the setting of that license and the instant case. He followed well-established methods for evaluating a prior license within the framework of the *Georgia-Pacific* factors. Defendants assert that Dr. Kennedy failed to account for an included covenant not to sue, but this is incorrect—the covenant was separate from the license and was not used for royalty calculations agreed upon by the parties to that agreement. Defendants' complaints at best go to the weight of the opinion, which can be explored on cross examination before the jury, and not to admissibility.

Second, Defendants assert that Dr. Kennedy improperly relied on the entire market value to render his opinion, but this is simply false.[1] Defendants' argument on this issue amounts to sleight of hand in that they argue that Dr. Kennedy failed to apportion the value of "antennas." However, the infringing devices are not antennas, they are wireless hotspots. The invention is not limited to antennas. According to Carucel's technical expert Dr. Kiasaleh, the invention involves the entire hotspot and directly uses at least [REDACTED] of its components, which makes sense given that the invention is directed to "mobile base stations" as new types of devices that act as intermediaries between computing devices and cell towers, effectively the entire purpose of the later-developed wireless hotspot products. Report of Patrick F. Kennedy, Ph.D ("Report"), 29-30 [Dkt 154-1 Ex.

[1] Although Dr. Kennedy did not rely on the entire market value rule for his opinion, there is a reasonable basis to do so in this case, and Carucel incorporates its response to Defendants' Motion *in Limine* No. 4 (filed concurrently) on this point.

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

1]. Defendants either misunderstand or misrepresent Dr. Kennedy's use of antenna cost. He did not opine that the invention is antennas—he stated that in addition to his other analysis, he relied upon Carucel's technical expert's review of the hotspots' bill-of-material to identify a minimal portion of the material cost related to the invention whose cost would be less than the value of the invention, which led him to identify the antennas. This analysis was a further confirmation that the magnitude of the royalty as to the infringing hotspots was appropriately limited. Dr. Kennedy's royalty rate opinion is not based just on antennas, and therefore the argument that antennas should have been apportioned is incorrect.

Neither of these challenges shows any violation of *Daubert*. Dr. Kennedy's testimony will help the jury and is based on proper methodology. Defendants' motion to exclude parts of that testimony should be denied.

## II. LEGAL STANDARD

When considering expert testimony offered pursuant to Rule 702, the trial court acts as a "gatekeeper" by "making a preliminary determination of whether the expert's testimony is reliable." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

The test for a *Daubert* challenge is just one of relevance; if the expert testimony may be of some use to a jury, it should be allowed. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1033 (9th Cir. 2014). The Court's job is not to displace the jury with respect to the expert, only to ensure the expert did not depart from acceptable methods. *See Multimedia Patent Trust v. Apple Inc., 2012 U.S. Dist. LEXIS 192122, *5-*7* (S.D. Cal. Nov. 19, 2012) (Huff, J.). "In evaluating proffered expert testimony, the trial court is 'a gatekeeper, not a fact finder.'" *City of Pomona*, at 1033. "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the

jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010); *see also Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("When . . . the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id*. (*citing Daubert*, 509 U.S. at 594, 596); *accord i4i Ltd. P'ship v. Microsoft Corp*., 598 F.3d 831, 856 (Fed. Cir. 2010).

## III. DR. KENNEDY'S USE OF THE NOVATEL-SPH LICENSE WAS APPROPRIATE UNDER *DAUBERT*

Dr. Kennedy properly relied on a prior license between Novatel and SPH (the "SPH license"). He spent a considerable amount of time conferring with Dr. Kiasaleh to be satisfied that this license was technologically comparable. (Report at 25-26 [noting many conversations with Dr. Kiasaleh] [Dkt. 154-1 Ex. 1].) He also performed an analysis of economic comparability. (*Id.*, at 26-28.) He then took into account differences existing between the SPH license and the hypothetically negotiated license between Novatel and Carucel. (*Id.*) This is exactly the methodology courts have held repeatedly should be used in analyzing comparable licenses as part of the *Georgia Pacific* analysis. "As we have held many times, using sufficiently comparable licenses is a generally reliable method of estimating the value of a patent." *Apple Inc. v. Motorola, Inc*., 757 F.3d 1286, 1326 (Fed. Cir. 2014); *see also ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc*., 694 F.3d 1312, 1333 (Fed. Cir. 2012); *Maxwell v. J. Baker, Inc*., 86 F.3d 1098, 1110 (Fed. Cir. 1996).

Defendants do not seriously contend that Dr. Kennedy should not have relied on the SPH license, or that the method he followed was in some way unsound. In fact, their damages expert Dr. McDuff ***also*** includes the SPH agreement as the basis for his royalty rate (along with eight other settlement agreements). Rather, Defendants present two discrete arguments: (1) that Dr.

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

Kennedy obtained the wrong royalty rate from the license by failing to account for a covenant not to sue; and (2) that his adjustments to the royalty rate from that agreement were incorrect. These arguments are incorrect, and neither complaint speaks to admissibility but only the weight of the evidence. Such challenges should not form the basis of *Daubert* challenges and can be presented as part of cross-examination at trial.

**A. Dr. Kennedy Used the Actual Royalty Rate in the SPH License, Which is an Accepted Method**

**1. Dr. Kennedy Was Correct to Look at the Expressly Stated Royalty Rate**

Dr. Kennedy did not invent a royalty rate in the SPH license. The license itself clearly sets that rate: [redacted] per unit for future product sales and [redacted] for past sales. (Report at 28 [Dkt. 154-1 Ex. 1].) The license expressly states that Novatel is paying SPH [redacted] for a license covering [redacted] units of the licensed [redacted] (equating to [redacted] per unit). (*Id.*, at 28 & n.103*;* Declaration of Robert Harkins in Support of Plaintiff's Oppo. to Defendants' Motion to Exclude Expert Testimony of Plaintiff's Damages Expert Patrick F. Kennedy ["Harkins Dec."], Ex. 1, at § 1(c) [showing [redacted] as the only licensed products] & § 3 [setting out [redacted] payment for license].) Then it expressly states that the option for future products will be "at the rate of [redacted] per unit." (*Id.*, at p. 4, § 2(b) ¶ 6.) Using a royalty rate in a comparable license is an accepted method to conduct damages analysis in a patent lawsuit. *Apple v. Motorola*, 757 F.3d at1326.

Defendants provide no substantive dispute. Despite the agreement clearly setting forth a license and a royalty rate, Defendants argue that Dr. Kennedy should have ignored that rate and used an entirely different rate by including many products that were not part of the license. However, this is wrong for at least two reasons. First, an expert is entitled to rely on the express statements and terms of an agreement and take the parties at their word. It is unreasonable for an

expert to work off the assumption that parties entering into an arms' length patent license would conspire to misrepresent the terms of the license.

Second, Defendants' analysis of the SPH license is completely incorrect. The non-licensed products were part of a [REDACTED] A covenant that permits a future lawsuit is not a blanket license. *Accord Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1299 (Fed. Cir. 2009) (the scope of a covenant not to sue depends on its terms and may give rise to future infringement by products covered by the covenant). "[T]he relevant inquiry is whether the covenant not to sue relieves plaintiff of the possibility of suit, such that no legal interests are implicated." *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 2015 U.S. Dist. LEXIS 163116, *11 (N.D. Cal. Dec. 3, 2015). Thus, Defendants' citation to *TransCore* is inapposite, because that case involved an unrestricted covenant not to sue. *See TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009) (involving covenant not to sue with no time limit).[2]

The SPH agreement provided [REDACTED] but did not authorize Novatel to make, use or sell any devices outside the license. (Harkins Ex. 1, at § 2(a) [REDACTED]; § 2(b) [license covers only licensed products].) Because that [REDACTED], Novatel would be taking a risk in selling any other products if they infringed the patent—[REDACTED]

[2] Defendants *know* their argument is legally without merit, as they themselves note that [REDACTED]. (*See* Mtn., at 11 n.7.) Thus, their citation to *TransCore*, which had no time limit, is disingenuous at best. Defendants argue that an average product life cycle is three years, but even if true that is irrelevant because [REDACTED] was within the six-year statutory damage period for an infringement suit brought at the expiration of the covenant (35 U.S.C. § 286), so even if a given product was only on the market for three years, SPH could recoup damages for all of those unlicensed sales.



RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

[REDACTED], nothing barred SPH from initiating a lawsuit and seeking past damages. Since a party is statutorily entitled to six years of patent damages under 35 U.S.C. § 286, SPH could recover damages for any infringement during that period for any products not covered by the license. Moreover, [REDACTED] [REDACTED] (*See id.*) Dr. Kennedy properly took the signatories at their word when they stated in the SPH agreement that there was a per unit royalty of [REDACTED] per unit on future products. Furthermore, Defendants also note that Dr. Kennedy did not ignore the covenant; he accounted for it adding some value, just not the phantom value Defendants want to attribute. (Mtn., at 12.)

Defendants make a host of other complaints about Dr. Kennedy's use of the SPH agreement that would go to the weight and not admissibility of the testimony. For example, they say he failed to account for a purported "lack of success" of Carucel in marketing its patents, but that has nothing to do with the SPH agreement, and it ignores that Carucel licensed the patents-in-suit to another party for [REDACTED] more than initial payment under the SPH license.

Defendants also complain that Dr. Kennedy did not look at SPH settlements with other entities not party to this litigation, but the agreement he looked at was with Novatel, which is informative of the structure and per unit payment Novatel was willing to make for a technology license at the time. Furthermore, Dr. Kennedy did not merely look at the context of that settlement in view of his own understanding of the technology at issue; he appropriately relied on the technical expert for a determination of technological comparability and performed an analysis of comparability based on economics, timing and setting. (*See* Report, 28-30 [Dkt. 154-1 Ex. 1].) In addition, Defendants complain that the license was in a litigation setting, which is true, but he accounted for that setting, and in such conditions using a settlement license is a well-known acceptable methodology. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860,

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

870-72 (Fed. Cir. 2010). Defendants' own expert also relied upon settlement agreements, including the SPH agreement.

Finally, Dr. Kennedy also looked at other licenses and discussed them at length with the technical expert, and it was based on this license-by-license review that he determined the other licenses were not comparable, which is also the correct method under Federal Circuit authority. (*See id.;* Report, at 37-39.) Contrary to Defendants' representations, Dr. Kennedy followed tried-and-true methodology for comparable license agreements.

**2. An Expert Cannot Be Required to Find that Novatel Participated in Fraud in Its Own Agreement**

Surprisingly, Novatel asks this Court to hold that a reasonable expert must disbelieve what Novatel itself stated in a license agreement. Novatel expressly agreed to a [redacted] per unit royalty, but now it wants the Court to hold that any reasonable expert would conclude that in fact it was misleading people and did not really believe its own representations. In fact, the opposite is true—it would be unsound methodology to assume parties negotiating at arms' length would agree to a fake royalty rate. Not surprisingly, Defendants fail to cite a single case where a Court excluded an expert's testimony as unreliable for being based on the express statements made in a license agreement.

Additionally, Defendants' argument that the parties' express agreement as to the royalty should be disregarded would be barred by unclean hands and estoppel. There is no reason to believe that Novatel engaged in fraud – as explained above, the license and covenant were distinct and the royalty related only to the license. But if Novatel did engage in affirmative misstatements in the agreement, that would constitute unclean hands, and Novatel cannot now use that misdeed to change the royalty rate to its advantage in this case. *See Henderson v. U.S.*, 135 S. Ct. 1780, 1783 n.1, 191 L. Ed. 2d 874 (2015) (unclean hands serves to bar a party from gaining benefit from its own misdeeds). Since Novatel knew parties would rely on its representation as to the royalty (and in fact now

complains that Carucel's expert is relying on that representation), its act in making the representation in the agreement also constitutes equitable estoppel. *Accord United States v. Topilina*, 593 Fed. Appx. 639, 641 (Fed. Cir. 2015), *citing United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970) for the proposition that "[e]quitable estoppel prevents a party from assuming inconsistent positions to the detriment of another party.").

Thus, not only did Dr. Kennedy use the correct royalty rate, but Defendants should be barred from raising an argument at trial that would suggest Novatel engaged in fraud to hide a lower royalty rate. At the very least, Dr. Kennedy's reliance on the express statements in the license as to royalty are proper under *Daubert* and not excludable.

### B. Dr. Kennedy's Adjustments to the Novatel-SPH License Do Not Violate *Daubert*

Defendant's second attack on the SPH license is to Dr. Kennedy's adjustments based on differences between that license and a hypothetically negotiated license for the patents-in-suit. Defendants point to no law or testimony that Dr. Kennedy's adjustments were improper. That is because the law holds exactly the opposite.

Dr. Kennedy did not subjectively assign values to the patents. He relied on technical expertise to determine the relative value of the two invention sets. He meticulously reviewed the bill of materials with the technical expert to determine which components were involved in the invention, then applied a small fraction of this amount based on the technical expert's opinion as to value. He also applied profitability as a factor, and checked the magnitude of the royalty against other key components to ensure that the resulting range matched. (*See, e.g.*, Report, at 24-31 [Dkt. 154-1 Ex. 1].) This type of methodology is in line with the methodology approved by this Court and the Federal Circuit in *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1297 (Fed. Cir. 2015). Dr. Kennedy did not simply divide the amount by four and divide it among the patents, he

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

relied on the technical expert to determine that the relative value of the different patents. The Federal Circuit has long recognized that assigning value to individual product features necessarily permits "some degree of approximation and uncertainty." *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014) ("[W]e are cognizant of the difficulty that patentees may face in assigning value to a feature that may not have ever been individually sold. However, we note that we have never required absolute precision in this task; on the contrary, it is well-understood that this process may involve some degree of approximation and uncertainty.") The opinion is entirely different than the decisions cited by Defendants where there was no basis for the damages expert to apply values to the patents.[3]

"Once the expert shows some discernible link between the comparable license and the claimed technology, distinctions and oversights are matters for cross-examination." *In re Maxim Integrated Prods*., 2015 U.S. Dist. LEXIS 124062, *31-33, 2015 WL 5311264 (W.D. Pa. Sept. 11, 2015) (internal citations omitted); *ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860, 870 (Fed. Cir. 2010); *Apple Inc. v. Motorola, Inc*., 757 F.3d 1286, 1326 (Fed. Cir. 2014) (a jury is capable of assigning the appropriate weight to comparable licenses); *Ericsson Inc. v. D-Link Sys.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) ("[T]he fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility"). Making adjustments to other comparable licenses that

[3] In *LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 69 (Fed. Cir. 2012), the issue was whether one feature of a disk drive could establish a value of one-third of an entire computer system when that number was "plucked from the air" rather than based on a technical expert, which is the ***opposite*** of what Dr. Kennedy did here when he consulted with technical expert Dr. Kiasaleh. In *Oracle Am., Inc. v. Google Inc*., No. C 10-03561 WHA, 2012 U.S. Dist. LEXIS 33619 (N.D. Cal. Mar. 13, 2012), the technical experts said they could *not* determine the relative importance of the patents at issue, but the damages expert on his own opined that they were the most important in a large portfolio based solely on the premise that "Google decided to infringement those…." *Id.*, at *12. And in *Apple v. Motorola*, 757 F.3d at 1321-26, the Court ***allowed*** the use of comparable licenses based on reliance on a technical expert, but disallowed the arbitrary allotment of another expert when *not* based on a technical expert. That decision is entirely supportive of Dr. Kennedy's analysis in this case.

embody certain differences is not only appropriate but required for an expert to do his or her job correctly. If Defendants disagree with the adjustments, they can raise their issues with the jury. Such challenges, at best, go to the weight and not the admissibility of the expert's opinions. *See Apple*, at 1326.

Finally, to the extent Defendants' criticize Dr. Kennedy for analyzing the SPH license to the exclusion of other licenses, that position is incorrect. Dr. Kennedy evaluated several licenses in his analysis of a hypothetical negotiation between Carucel and Novatel, but found that they were not in fact comparable.[4] Dr. Kennedy properly excluded Carucel's settlement agreement with [redacted] due at least the fact that the royalty rate for [redacted] systems was approximately [redacted] per unit at the time of settlement, an amount [redacted] higher than Dr. Kennedy's conclusion of a proper royalty for Novatel in this case due to substantial differences in the licensed devices.[5] (Report, at 32-34 [Dkt. 154-1 Ex. 1].) Dr. Kennedy also considered and accounted for the Qualcomm / Novatel Subscriber Equipment License Agreement, determining that the license was not comparable for Novatel due to the difference in bargaining power. (*Id*. at 35-36.) In addition, Dr. Kennedy considered, but ultimately excluded various Novatel license agreements for lack of technical comparability based upon analysis performed in reliance on technical expert Dr. Kiasaleh. (*Id*. at 36-39; Kennedy Depo. at 83:16-85:23, 134:1-138:17, 222:17-223:21, 241:19-242:18 [Harkins Dec. Ex. 2]; Supplemental Report of Patrick F. Kennedy, Ph.D at 76-82 [Dkt.

[4] As noted above, comparability analysis is a pre-requisite for relying on other licenses. *See ResQNet*, 594 F.3d at 870-72; *Apple v. Motorola*, 757 F.3d at 1315. One of the serious flaws with the methodology of the expert report of Defendants' damages expert is that he failed to conduct a proper comparability analysis and therefore included licenses that are not comparable. (*See* Plaintiff's Notice of Motion and Motion to Exclude Expert Testimony of Deforest McDuff Pursuant to Daubert, at 14-18.)

[5] Defendants ignore the gross difference in volume of infringing unit sales between Novatel and [redacted] when they emphasize that Novatel would be subject to greater liability. Similarly, Defendants ignore great differences between the volume of licensed units in the SPH agreement and the units to be licensed under the hypothetical negotiation, by erroneously expanding the pool of covered products as discussed above in III.A.

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

169-1 Ex. F].)

## IV. DR. KENNEDY'S ANALYSIS REGARDING THE ANTENNAS WAS PROPER

Defendants either misunderstand or misrepresent Dr. Kennedy's analysis regarding antenna cost. They appear to erroneously assert that the antennas are the smallest saleable unit and then accuse Dr. Kennedy of failing to apportion the value of the antennas in the infringing wireless hotspots. But there is no claim that the antennas infringe the patents-in-suit by themselves. If the jury finds infringement, it will be the entire hotspots that infringe. The claims do not speak to technology within an antenna—the invention addresses the use of a device to act as a mobile base station and act as an intermediary with a device and stationary cell towers. Thus, it is a fundamental technology to the very purpose of the wireless hotspots.

Dr. Kennedy performed a bill-of-materials (BOM) analysis with Carucel's technical expert, who stated that the invention went to the core functionality of the entire hotspot rather than any smaller salable unit and was "critical to Novatel's ability to manufacture a commercially acceptable MiFi device." (Report, at n. 107 [Dkt. 154-1 Ex. 1].) Dr. Kiasaleh also "identified approximately [REDACTED] of the costs in the BOM as associated with the invention" (*Id.*, at 30.) Thus, Defendants' representation that the analysis was based only on antennas is simply incorrect. Since Dr. Kennedy did not apportion the invention's value to the antennas, Defendants lack the basis to argue that he needed to further apportion value of the antennas.

Instead, Dr. Kennedy used the SPH agreement as a comparable license within a *Georgia-Pacific* analysis. Comparable licenses already build in apportionment, given that the royalty in a completed license is necessarily based on "the value of the asserted patent, and no more." *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015) (internal quotation and citation omitted). In the SPH agreement, Novatel agreed

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

to pay an amount per device for the already-apportioned patented technology. Dr. Kennedy also looked at the entire hotspot (the patents are not mere improvements or add-ons to the devices, but relate to the devices' core functionality in transmitting and receiving data), and then looked at apportionment of the components using a bill of materials methodology after appropriately relying on a technical expert to provide that technological component-level apportionment. The discussion of the antennas was not part of that, but rather a separate discussion in which Dr. Kennedy noted that in a negotiation, Novatel would likely focus on the antennas and agree to pay a multiple of that cost, but not an entirely different magnitude. (Report, at 30-31 [Dkt. 154-1 Ex. 1].) Thus, the antenna cost only served as a quantitative check on the other analysis Dr. Kennedy performed that recognized the realities of negotiating licenses for multi-component products.

Defendants' challenge to Dr. Kennedy's discussion is based on the incorrect assumption that he used the antennas as the royalty base, which he did not, so the motion should be denied.

## V. CONCLUSION

Dr. Kennedy is an economist who has performed a valuable service to courts in hundreds of lawsuits to objectively assess damages based on well-established economic principles, and Defendants have not shown otherwise. There is no reason to exclude any of Dr. Kennedy's testimony.

Dated: March 20, 2017

*/s/ Robert Harkins*

Robert Harkins, Cal. Bar No. 179525
RuyakCherian LLP
1936 University Ave, Ste 350
Berkeley, CA 94704
Telephone: (510) 944-0190
bobh@ruyakcherian.com

RuyakCherian LLP
1936 University Avenue, Suite 350
Berkeley, CA 94704

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 20th day of March, 2017, with a copy of this document via the Court's EM/ECF system. Any other counsel of record will be served by electronic mail, facsimile and/or first class mail on the same date.

*/s/ Robert Harkins*
Robert Harkins

RuyakCherian LLP
1936 University Ave, Ste 350
Berkeley, CA 94704
Telephone: (510) 944-0190
sunnyc@ruyakcherian.com